UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PAMELA KESLER )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>USACS MANAGEMENT GROUP, LTD. )<br>)<br>Defendant. ) | <br><br><br><br><br><br><br><br>**JURY DEMAND**<br>**ENDORSED HEREON** |

## COMPLAINT

Plaintiff Pamela Kesler ("Kesler") alleges as follows for her Complaint against Defendant USACS Management Group, Ltd. ("Defendant"):

1. Kesler worked for Defendant as a Clinical Data Analyst.

2. Defendant is an Ohio corporation engaged in interstate commerce.

3. Defendant's principal place of business is in Jackson Township, Ohio.

4. Defendant had at least 20 employees at the time of Kesler's termination from Defendant.

5. Kesler worked for Defendant from approximately December 14, 2015 until on or about January 31, 2018.

6. Defendant initially employed Kesler in a temp. to hire position through Express Employment Professionals, beginning on or about December 14, 2015.

7. On or about February 8, 2016, Defendant began employing Kesler as a permanent employee.

8. Kesler was sixty-three years old at the time that Defendant terminated her employment.

9. Kesler was qualified for her job as Clinical Data Analyst.

10. In 2017, Defendant stopped including Kesler on work emails that were essential to her job.

11. Kesler made numerous requests for Defendant to include Kesler on these emails, but these requests were ignored.

12. Kesler made these requests to Defendant's Vice President, Sue Brown ("Brown").

13. On or about December 15, 2017, Kesler complained to Defendant's Employer Relations Vice President, Eilieen Zehe ("Zehe"), that she was being discriminated against because of her age.

14. Kesler complained that she was being treated differently than younger employees and that she was not receiving the same opportunities that younger employees received. Kesler told Zehe that there was an age bias.

15. The very next business day after Kesler complained about an age bias, on or about December 18, 2017, Brown, Zehe, and Plaintiff's direct supervisor, Marla Sabey ("Sabey"), met with Kesler and informed her that Defendant was going to place her on a Performance Improvement Plan ("PIP").

16. During this December 18, 2017 meeting, Kesler again complained (this time to Zehe, Sabey and Brown) that there was an age bias.

17. The PIP was not immediately started, nor did Defendant immediately provide a draft of the PIP to Kesler.

18. Instead, Defendant presented Kesler with the 90-day PIP on January 3, 2018, and the PIP started that same day.

19. Kesler complained to Defendant that it had not given her the opportunity to respond to numerous inaccuracies in the PIP, especially regarding the completion of deliverables.

20. The terms of the PIP stated that it was a 90-day performance improvement plan.

21. The PIP alleged four "areas of concern": (1) Defendant alleged that Kesler had become "upset with [a] discussion and abruptly left [her supervisor's] office with comments to [the supervisor] in a raised tone of voice"; (2) Defendant accused Kesler of having "several instances of deliverables that were assigned and agreed upon dates were not met"; (3) Defendant complained about inaccurate reporting of PTO time; and (4) Defendant complained that Kesler had once not used the appropriate method for reporting a sick day.

22. The single instance of Kesler allegedly not appropriately reporting a sick day occurred months prior to the implementation of the PIP after Kesler suffered from complications due to surgery to correct age-related cataracts.

23. After Defendant implemented the PIP, Kesler did not take a single sick day nor did she take any PTO time.

24. After Defendant implemented the PIP, Kesler did not exhibit any insubordination, such as "abruptly" leaving a supervisor's office, nor did Kesler miss any due dates for a single assignment or deliverable.

25. Kesler quickly improved her alleged performance deficiencies.

26. On or about January 24, 2018, Brown and Sabey met with Kesler to review her progress with the PIP, and falsely suggested that Kesler had not improved on certain aspects of the PIP.

27. On January 25, 2018, Defendant provided Kesler with a supposed summary of the previous day's meeting, which falsely accused Kesler of making "physical demonstrations of displeasure (slouching down, defensive posturing) . . . ."

28. "Slouching" and "defensive posturing" were never mentioned in the PIP as areas that Kesler needed to improve.

29. Also on January 25, 2018, Defendant scheduled another PIP review meeting for February 6, 2018.

30. Despite the ridiculous claim that Kesler needed to improve because she slouched and exhibited "defensive posturing," Kesler herself offered to meet with a counselor to ensure that her behavior complied with Defendant's supposed expectations. Kesler took this extraordinary step to demonstrate her willingness to comply with Defendant's outrageous demands.

31. Kesler did meet with a counselor to ensure that her behavior met Defendant's absurd (and pretextual) standard.

32. In the January 25 email from Defendant regarding the January 24 meeting, Defendant also complained that Kesler was not appropriately prioritizing work assignments. However, Defendant itself was now in charge of prioritizing work assignments, and Kesler followed the exact prioritization that Defendant set.

33. The work assignments were set and agreed upon daily.

34. Kesler also offered to receive additional training to maximize her time efficiency.

35. In fact, Kesler **never** missed a single deadline after Defendant presented her with the performance improvement plan.

36. On at least one occasion during the PIP window, Defendant changed a deadline so that the project would be due mere hours after informing Kesler of the change. Despite the incredibly short window to complete the assignment, Kesler completed the work on time.

37. On or about January 25, 2018, the day after the follow-up meeting, Kesler emailed Brown and Sabey and informed them that she was shocked that they did not think she was meeting the expectations for the PIP. Kesler also expressed that she was disappointed but that she would continue to try to turn things around.

38. Kesler strove to comply with Defendant's inane requests. On January 25, 2018, Kesler sent an email to her supervisor stating "I agree that I have the skills and I know that I have will. I am committed to turn this around . . . ."

39. Defendant could not provide any legitimate criticism of Kesler's work performance nor behavior, so it provided these paper-thin pretextual reasons as supposed shortcomings.

40. The allegations made in the follow-up to the PIP were false, and the complaints provided by Defendant in the PIP and follow-up summary to the PIP were mere pretexts for Defendant's actual complaint about Kesler: her age.

41. On or about January 29, 2018, Kesler attended a previously scheduled meeting with Sabey. During this meeting, Kesler informed Sabey that Defendant was subjecting her to a hostile work environment.

42. Later that same day, Defendant contacted Kesler and scheduled a meeting for Wednesday, January 31, 2018. The meeting was allegedly for Kesler's year-end performance review.

43. When Kesler attended the meeting on Wednesday, January 31, 2018, she discovered that it was actually her termination meeting.

44. At this meeting, Defendant did not provide Kesler with any explanation for why it was terminating her employment.

45. Regardless of any pretextual reason that Defendant could have offered, the actual reasons for the termination were easy for Kesler to discern: Defendant terminated Kesler because of her age and in retaliation for her complaints of age discrimination and a hostile work environment.

46. Not only did Defendant deny Kesler the 90-day period to improve provided by the PIP, but it did not even provide her the approximately two weeks between January 25 and the scheduled February 6, 2018 meeting.

47. Defendant replaced Kesler with a significantly younger individual.

48. Kesler's replacement is not yet thirty years old.

49. The Ohio Department of Job and Family Services held a hearing to determine whether Kesler was entitled to unemployment benefits. It found that "The weight of the evidence indicates [Kesler] was discharged by [Defendant] for making complaints of age discrimination and a hostile work environment."

50. Kesler filed a charge of age discrimination with the Equal Employment Opportunity Commission more than sixty days ago. Therefore, Kesler has exhausted her administrative remedies.

51. This Court has subject matter and personal jurisdiction over the claims and parties raised in this Complaint.

52. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. Section 1391(b)(2) because a substantial part of the events giving rise to Kesler's claims occurred in that district.

53. Kesler has hired the undersigned counsel and has agreed to pay them reasonable attorney's fees and costs if they are successful on one or more of the claims set forth herein.

## COUNT I
## AGE DISCRIMINATION
### (Pursuant to Age Discrimination in Employment Act)

54. Kesler re-alleges each allegation set forth in paragraphs 1-53 above.

55. Kesler brings this action under the Age Discrimination in Employment Act, 29 U.S.C. Sections 621, *et seq*. ("ADEA").

56. Kesler belongs to a protected class.

57. Defendant terminated Kesler because of her age.

58. Kesler was qualified for the position that she held with Defendant.

59. Kesler suffered an adverse employment action by being terminated by Defendant.

60. The person who replaced Kesler was significantly younger than Kesler.

61. Kesler has been damaged by Defendant's age discrimination.

62. Defendant's conduct is the cause of Kesler's damages.

63. Kesler is entitled to her attorney's fees and costs pursuant to the ADEA.

64. Defendant willfully violated the ADEA.

65. Kesler is entitled to liquidated damages under the ADEA.

## COUNT II
## AGE DISCRIMINATION
### (Pursuant to Ohio Revised Code)

66. Plaintiff re-alleges each allegation set forth in paragraphs 1-65 above.

67. Kesler brings this action under Ohio Revised Code Sections 4112.02(L) and 4112.99.

68. Defendant terminated Kesler because of her age.

69. Kesler was qualified for the position that she held with Defendant.

70. Kesler suffered an adverse employment action by being terminated by Defendant.

71. The person who replaced Kesler is significantly younger than Kesler.

72. Kesler has been damaged by Defendant's age discrimination.

73. Defendant's conduct is the cause of Kesler's damages.

74. Defendant acted with actual malice, entitling Kesler to punitive damages under Ohio Revised Code Sections 4112.02(N) and 4112.99 and her attorney's fees and costs.

## COUNT III
## RETALIATION

75. Kesler re-alleges each allegation set forth in paragraphs 1-74 above.

76. Kesler brings this action under the Age Discrimination in Employment Act, 29 U.S.C. Sections 621, *et seq.*, ("ADEA") and Ohio Revised Code Sections 4112.02(L) and 4112.99.

77. Kesler engaged in statutorily protected activity by opposing Defendant's age discrimination practices.

78. Kesler had a reasonable, good faith belief that Defendant was engaging in unlawful employment practices.

79. Kesler suffered an adverse employment action by being terminated by Defendant.

80. The adverse employment actions that Kesler suffered would be materially adverse to a reasonable employee and would persuade a reasonable worker not to make or support a charge of discrimination.

81. There is a causal link between Kesler's protected opposition and her termination.

82. Kesler has been damaged by Defendant's retaliation.

83. Defendant's conduct is the cause of Kesler's damages.

84. Defendant acted with actual malice, entitling Kesler to punitive damages for her retaliation claim.

85. Kesler suffered and is entitled to emotional distress damages.

86. Kesler is entitled to her attorney's fees and costs pursuant to the ADEA.

87. Defendant willfully violated the ADEA.

88. Kesler is entitled to liquidated damages under the ADEA.

WHEREFORE, Plaintiff demands judgment against Defendant for her lost wages, reinstatement or front pay, lost fringe benefits, liquidated damages, statutory damages, non-economic damages such as emotional pain, suffering, inconvenience, physical anguish, and loss of enjoyment of life, any other compensatory damages, punitive damages, prejudgment interest at the statutory rate, post-judgment interest, attorney's fees and costs, and all other relief to which she is entitled.

JURY TRIAL DEMANDED.

Respectfully submitted,

/s/ Christopher M. Sams
Stephan I. Voudris, Esq.
Supreme Court No. 0055795
Christopher M. Sams, Esq.
Supreme Court No. 0093713
Voudris Law LLC
8401 Chagrin Road, Suite 8
Chagrin Falls, OH 44023
svoudris@voudrislaw.com
csams@voudrislaw.com
440-543-0670
440-543-0721 (fax)
*Counsel for Plaintiff*